Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Nicholas A. West (SBN 309003) *nw@mckennonlawgroup.com*
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone:  949-387-9595  |  Fax:  949-385-5165

Attorneys for Plaintiff Michael Bell

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| MICHAEL BELL, | Case No.: |
| Plaintiff, | Action Filed: |
| vs. | Trial Date: |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA; and DOES 1 through 10, inclusive, | **COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PRE-JUDGMENT AND POST-JUDGMENT INTEREST AND ATTORNEYS' FEES** |
| Defendants. | [Filed Concurrently with: <br> -  Civil Cover Sheet; <br> -  Summons; and <br> -  Certification of Interested Parties] |

Case No.:

**JURISDICTION AND VENUE**

1.    Plaintiff Michael Bell ("Plaintiff") brings this action to recover benefits and to enforce and clarify his rights under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502(e) and (f), 29 U.S.C. Section 1132(e) and (f), and 28 U.S.C. Section 1331.

2.    Venue lies in the Northern District of California, pursuant to ERISA Section 502(e)(2), 29 U.S.C. Section 1132(e)(2), because Plaintiff resides in this district, some of the alleged breaches occurred in this district, and the ERISA-governed plan at issue was administered in part in this district.

**THE PARTIES**

3.    Plaintiff is an individual who, at all times relevant to this action, was a citizen of the State of California and a resident of the City of Modesto in Stanislaus County.  Further, at all times relevant to this action, Plaintiff was a participant, as defined by ERISA Section 3(7), 29 U.S.C. Section 1002(7), in the employee welfare benefit plan (the "Plan") established by his former employer Tesla Motors, Inc. ("Tesla"), which is at issue in this action.

4.    Defendant Prudential Insurance Company of America ("Prudential"), at all times relevant, is a named claims fiduciary that administered Accidental Death & Dismemberment ("AD&D") benefits provided to Plan participants, including Plaintiff, by issuing group policy number 51526 (the "Policy") to Tesla.  That policy and the Plan promised to pay AD&D benefits to Plaintiff should he suffer certain covered losses.

5.    The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues DOES 1 through 10 by fictitious names and will ask leave of the Court to amend this Complaint to show the

Case No.:



true names and capacities of DOES 1 through 10 when the same are ascertained. DOES 1 through 10 are sued as principals and/or agents, servants, attorneys, or employees of said principals, and all of the acts performed by them were within the course and scope of their authority and employment.  Plaintiff is informed and believes and thereupon alleges that each of DOES 1 through 10 is legally responsible in some manner for the events referred to herein, and directly and proximately caused the damages and injuries to Plaintiff, as hereinafter alleged.



## FACTUAL BACKGROUND

6.      Plaintiff worked for Tesla as a Service Lead Material Handler. Through his employment, he acquired AD&D benefits under the Policy and the Plan. Plaintiff acquired $103,000 in basic AD&D coverage and an additional $190,000 in supplemental AD&D coverage under the Policy.  The Policy states in relevant part:

FOR YOU ONLY
This Coverage pays benefits for accidental Loss which results from an accident.
Loss means your:
. . .
(5) loss of hand or foot by severance at or above the wrist or ankle.
(8) loss of all toes on the same foot by severance at or above the point at which they are attached to the foot.
(9) **loss of Use of a hand or foot**.  (Emphasis added).

. . .

**Loss of Use:** The total and permanent loss of function

7.      The Policy also states:

**A. BENEFITS.**

Benefits for accidental Loss are payable only if all of these conditions are met:

(1) The person sustains an accidental bodily Injury while a Covered Person.

(2) The Loss results directly from that Injury and from no other cause.
. . .
**Losses Not Covered**

A Loss is not covered if it results from any of these:

. . .

(3)Sickness, whether the Loss results directly or indirectly from the Sickness.

(4)Medical or surgical treatment of Sickness, whether the Loss results directly or indirectly from the treatment . . . .

8.     As for the amount of the Policy's proceeds payable upon injury, the Policy includes a table listing the benefit paid.  It explains that:

**Benefit Amount Payable:** The amount payable depends on the type of Loss as shown below. All benefits are subject to the Limits below.
One Foot............................................................................... 50 [percent]
. . .
Loss of Use [of a foot]......................................................... 25 [percent]
All Toes on One Foot……………………………………….13[percent]

9.     Plaintiff suffers from diabetes and polyneuropathy but these conditions did not cause him any significant health complications.

10.     On August 21, 2021, while at a gas station, Plaintiff stepped on a nail with his left foot.  Although he felt pain in his foot, he did not then know the cause of this pain.

11.     After returning home, Plaintiff saw blood in his sock and then noticed a puncture wound.  At the time, it appeared clean and uninfected.  He cleaned the wound with hydrogen peroxide, dressed it, and went to bed.

12.     The next day, he called his primary care provider, Elvis M. Fedalizo, M.D. and scheduled an appointment for August 24, 2021.  Plaintiff started to feel additional pain in his foot and leg.  Dr. Fedalizo prescribed antibiotics and pain medication.

13.     On August 25, 2021, Plaintiff felt ill, and left work early.  He began to vomit and called his podiatrist, Brandon Tullis, M.D.  Plaintiff left a message, seeking an appointment with Dr. Tullis.

Case No.:





14.     On August 26, 2021, Plaintiff nearly passed out at work and was sent home.

15.     Dr. Tullis contacted Plaintiff on August 29, 2021 and he instructed Plaintiff to go to a hospital.

16.     On August 30, at the hospital, Dr. Tullis examined his foot and concluded that part of his foot must be amputated in part due to gangrene.

17.     On August 31, 2021, Dr. Tullis amputated part of Plaintiff's foot, including Plaintiff's left big toe and part of the left  hallux metatarsal phalangeal joint.  Thereafter, as a direct result of Plaintiff's accidental nail injury, Plaintiff had a total and permanent loss of use of his left foot which rendered his foot effectively useless.

18.     In October 2021, Plaintiff submitted a claim for benefits under the Policy.  As part of Plaintiff's claim for benefits, Dr. Fedalizo completed an attending physician's statement on October 19, 2021.  He explained that Plaintiff was totally disabled from performing his regular occupation.  He stated that Plaintiff's loss was as a result of a "nail puncture left foot."  He stated, however, that "diabetes, cellutis [sic] foot, gangrene toe" all contributed to the loss.  This statement was made in error, as Dr. Fedalizo later corrected.  Plaintiff would have loss of use of his foot regardless of whether he had diabetes or any other health condition.

19.     On December 1, 2021, Plaintiff underwent a second surgery to correct a problem with one of the remaining toes on his left foot.  He subsequently developed a staph infection.  Furthermore, due to the surgery, other toes on his left foot were broken.  This greatly complicated the recovery process.

20.     On January 4, 2021, one of Prudential's medical directors, Naishami Patel, D.O., concluded that Plaintiff had not lost use of his foot and, any loss he may have suffered stemmed, at least in part, from his diabetes.  He stated: "In my medical opinion, the available documentation supports that the claimant's claimed loss of left foot directly or indirectly results from his treatment of diabetes."



21. In a letter dated January 17, 2022, Prudential denied the claim. It relied on the medical director's assessment of Plaintiff's condition. Of note, Prudential did not conclude that Plaintiff had not lost use of his foot. It simply concluded that Plaintiff's diabetes contributed to the loss and, therefore, it was not covered under the Policy. This was incorrect. This decision was based on the Policy's language that if a sickness "directly or indirectly" caused the loss of use of Plaintiff's foot, the Policy did not cover the accident. However, under applicable Ninth Circuit authority, Prudential applied the wrong standard.[1]

22. Dr. Tullis sent Prudential a letter dated February 15, 2022 in which indicated he required amputation of the left great toe and partial amputation of the left 1st metatarsal joint due to infection caused by the puncture wound. He noted that the date of the surgery was August 31,2021, which he performed and that as a consequence, he had a loss of function including balance, propulsion, and stability.

23. Dr. Fedalizo sent Prudential a letter dated February 23, 2022 in which indicated he required amputation of the left great toe caused by the puncture wound. He noted that as a consequence, he had a "loss of function" of his left foot.

24. On February 28, 2022, Prudential received an appeal letter from Plaintiff. In the appeal letter, Plaintiff clarified factual errors in Prudential's denial of his claim. He emphasized that his diabetes did not contribute to the loss of his foot. He did not even need to take insulin until after his injury. Plaintiff also submitted the above-referenced letters from Dr. Tullis and Dr. Fedalizo.

---

[1] In *Dowdy v. Metropolitan Life Insurance Co.*, 860 F.3d 802, 808-09 (9th Cir. 2018), the Ninth Circuit explained that "In order to be considered a substantial contributing factor for the purpose of a provision restricting coverage to "direct and sole causes" of injury, a pre-existing condition must be more than merely *a* contributing factor." It must have "substantially contributed" to the loss. *See id*. "[T]here must be some evidence of a significant magnitude of causation." *Id*. The fact that someone has diabetes, in of itself, does not establish that such an exclusion applies. *See id*. at 810-811.



25.    Dr. Fedalizo's statement in no way referenced Plaintiff's diabetes.  He had concluded that diabetes had not contributed to the loss.  This effectively reversed any prior statements to the contrary.

26.    On March 21, 2022, Iliya Beylin, DPM, issued a peer review report, analyzing Plaintiff's medical records.  Her report states:

> In my medical opinion, based on the records in the file, the insured did not sustain a total and permanent loss of function of the left foot.
>
> . . .
>
> In this case, the insured sustained a loss of a big toe and part of a metatarsal. There is no documentation of loss of the whole foot or all toes. This injury does not qualify as total and permanent loss of function.
>
> [Question whether diabetes contributed to Plaintiff's loss]
>
> No, in my medical opinion, the loss was mainly due to a puncture wound by a nail. It is the injury that resulted in a loss of a part of the foot. There is documentation of the insured's sugar being elevated, however, this could be the consequence of an infection. If the insured had not sustained a puncture wound to the foot, whether being diabetic or not, it would most likely not have resulted in a loss of part of the foot.
>
> This review is from a Podiatry perspective only. The insured is a 49-year-old male with a medical history significant for diabetes, hyper-tension, and diabetic polyneuropathy stepped on a nail on 08/26/2021. As a result, the foot became infected and the insured was hospitalized from 08/29/2021 to 09/07/2021. On 08/31/2021, the insured underwent partial 1st ray amputation due to osteomyelitis.  In my medical opinion, based on the records in the file, the insured did not sustain a total and permanent loss of function of the left foot.

27.    Importantly, Dr. Beylin's report specifically rejected Prudential's previous assertion that diabetes contributed to the loss.  As such, Dr. Beylin rejected the basis of the claim denial.  As to her conclusion that Plaintiff did not lose use of his foot, this report was incredibly conclusory and short.  It was only four pages. The above quoted passage is the only portion of the report that did not consist of a



summary of the Policy's language or Plaintiff's medical records.  Whereas the report explained why Plaintiff's diabetes did not contribute to the amputation's necessity, it provided no meaningful explanation as to why Plaintiff had not lost use of his foot.  It appears to focus merely on how on the fact that he still has several toes and part of his foot.  Without explanation, it assumes that Plaintiff must lose all of his toes to lose use of his foot and he thus appears to equate the fact that he has remaining toes and part of his foot with a non-loss of use of his foot.  Nowhere does the Policy state that loss of use is dependent on the loss of all toes.  In fact, loss of all toes on a foot is a separate basis for a payment under the Policy.  As such, the report failed to provide a proper reason as to why Plaintiff had not lost use of his foot.  An insurer cannot properly rely on a conclusory peer review report.  The report must provide some basis for reaching its conclusion.  *See Carrier v. Aetna Life,* 116 F.Supp.3d 1067, 1081-1083 (C.D. Cal. 2015) (an insurer's reliance on peer reviewers who present their opinions in a conclusory fashion, making it unclear how they reached opinions that contrasted from those of the insured's attending physicians, is improper, and such conclusions should not be relied upon over the opinions of the insured's physicians); B*rainard v. Liberty Life Assurance Co. of Boston*, 173 F.Supp.3d 482, 492 (E.D. Ky. 2016).

28.    The report also failed to address the opinions of Plaintiff's treating physicians.  A failure to properly credit an attending physician's opinion can constitute an abuse of discretion.  *See Vaughan v. Reliance Standard Life Ins. Co.*, 2017 WL 11547385, at *4 (D. Ariz. Sept. 1, 2017).  In fact, the Ninth Circuit has criticized reliance on paper reviews over the opinions of treating physicians.  *See Montour v. Hartford Life & Accident*, 588 F.3d 623, 630 (9th Cir. 2009); *see also Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program,* 718 F.Supp.2d 1151, 1164 (N.D. Cal. 2010).

29.    Plaintiff submitted a letter dated April 28, 2022, titled "Appeal Letter #2."  He again sought to have Prudential reconsider its position that he was not



entitled to the benefits under the Policy.  As he explained, his treating physicians had concluded that he had lost the use of his foot.

30.    In a letter dated June 20, 2022, Prudential denied the appeal.  In the letter, Prudential stated that "A complete explanation of the decision to deny your claim for Dismemberment Benefits can be found in our letter dated January 17, 2022."  As explained above, the January 17, 2022 letter insisted that diabetes was a direct or indirect cause of Plaintiff's loss of his foot.  Because Prudential's own peer review doctor stated that this was incorrect, Prudential no longer asserted it as a reason to deny Plaintiff's claim, thus waiving the exclusions as a basis to deny his claim.  Plaintiff would have lost use of his foot regardless of whether he had diabetes.  However, the letter continued to assert that Plaintiff did not sustain a loss of use of his foot, asserting "You sustained a loss of a big toe and part of a metatarsal.  There is no documentation of loss of the whole foot or all toes." With this comment, it is clear that Prudential improperly equated a loss of all toes or the entire foot with loss of use of the foot and that without this, Plaintiff could not have lost of use of his foot.

31.    Of note, Prudential grossly misstated that if Plaintiff intended to sue Prudential over the denial of his claim, he only had 180 days from the receipt of the letter to do so.  The Policy specifically states that Plaintiff had three years from the date of loss to bring his claim.  It states:

**Time Limit To File Suit**

If your claim for benefits and any required appeals are denied (or not decided within the time periods discussed above), you may file suit as discussed below. If you elect to file suit, you should do so as soon as possible. However, you must file suit no later than three years after proof of your claim was first due as explained elsewhere in this Booklet, regardless of whether your claim is still pending in the claim or appeal process.

32.    Prudential had provided misinformation to Plaintiff regarding his right to bring suit in this Court.

Case No.:



33.    In an undated letter, Plaintiff attempted to appeal the decision in the June 20, 2022 denial of appeal.  He reiterated how his doctor, Dr. Tullis, "agrees I have loss of use of my left foot due to the dismemberment of my left toe."  He further explained that "I find it hard to maintain balance[.] I feel uneasy when trying to walk.  I have no feeling in my left foot."  As part of the appeals process, Dr. Tullis resubmitted his February 15, 2022 letter to Prudential.  He dated the letter January 31, 2023.  This reaffirmed Dr. Tullis's position that Plaintiff has lost use of his foot.  Plaintiff also resubmitted the prior letter from Dr. Fedalizo.

34.    In a letter dated June 16, 2023, Prudential denied Plaintiff's "second request for reconsideration."  The denial letter, and the reasoning therein, was virtually identical to the June 20, 2022 letter denying Plaintiff's first appeal.

35.    On November 2, 2023, Plaintiff submitted a letter to Prudential clarifying earlier statements made during the appeals process.  The letter contained written statements from Plaintiff and Dr. Tullis.  In his statement, Dr. Tullis stated that:

> Michael J Bell has been treated by me for an infection in his left foot sustained from an injury in July of 2021. As a consequence he has undergone 3 separate surgeries in 2021 resulting in a partial 1st ray resection including amputation of the great toe and a portion of the 1st metatarsal. As a consequence he has a loss of function including balance, propulsion and stability. The great toe and the great toe joint provide balance in standing and provide power for propulsion, and stability and walking. The lesser toes, 2, 3, 4, 5 also aid in balance, propulsion and stability but the great toe and the great toe joint provides about 50% of the balance, propulsion and stability that is provided by all toes. Mr. Bell is no longer able to stand and walk for significant length of time without a special inserts in his shoe to help with balance. Running for more than a few steps in an emergency are no longer something that he can do. He may require the assistance of a cane if he were required to stand or walk for any length of time.

Case No.:

36.     In his statement, Plaintiff explained that:

As a result of my accident, and the resulting surgeries, my foot has no feeling. This lack of feeling makes walking very dangerous. I am now unsteady when I walk. I tend to fall and require assistance. I cannot stand up on my own. I have to use a walker at times and, when attempting to walk upstairs, I have to be careful to use the handrail.

Many basic activities are now difficult or impossible. For example, I can no longer ride a bike or kick an object. I cannot drive a manual transmission car or truck. Even standing for long periods of time is uncomfortable. I spend most of my time lying down with my leg elevated.

37.     Prudential never responded to the statements or the November 2, 2023 letter.

38.     Plaintiff qualifies for coverage under the Policy because he lost use of his foot as the terms are defined in the Policy, and has now and at all times relevant convincingly demonstrated his entitlement to benefits under the Policy through medical records, other documents, information, and correspondence.

39.     The proper standard of review is de novo.  Any grant of discretionary authority contained in the Policy is void in light of California Insurance Code Section 10110.6.  Plaintiff was a California resident at all times relevant.  The Policy was issued after January 1, 2012, the date on which the statute became effective.  Prudential rendered its benefits decision after that date.  Accordingly, the denial of benefits at issue must be reviewed de novo.

## **FIRST CLAIM FOR RELIEF**

To Recover Benefits, Attorneys' Fees, Pre-Judgment and Post-Judgment Interest

under an ERISA Plan – 29 U.S.C. Sections 1132(a)(1)(B), (g)(1)

(Plaintiff against Prudential and Does 1 through 10)

-10-

Case No.:



40.    Plaintiff incorporates the previous paragraphs as though fully set forth herein.

41.    ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), permits a plan participant to bring a civil action to secure benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

42.    At all times relevant, Plaintiff has been entitled to AD&D benefits under the Plan.  By denying Plaintiff's claim for AD&D benefits under the Plan, and by related acts and omissions, Prudential violated, and continues to violate, the terms of the Plan, and Plaintiff's rights thereunder.

43.    Prudential has failed to follow even the most rudimentary of claims processing requirements of ERISA and of the Department of Labor Regulations and has failed to conduct a "full and fair review" of the claim denial, an action required by 29 U.S.C. Section 1133(2).  Thus, even if the Plan vests discretion in Prudential to make benefit determinations, no deference is warranted with regard to Prudential's handling of this claim.  *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997); *Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.").

44.    A "prudent person" standard is imposed on ERISA fiduciaries.  *See* 29 U.S.C. §1104(a)(1)(b).  A "fiduciary" is also under a duty of loyalty and care to the beneficiaries of the Plan.  *See* 29 U.S.C. Section 1104(a)(1).  Under ERISA: (1) a fiduciary must perform its duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing plan benefits to them; (2) a fiduciary must act with care, skill, prudence and diligence; and (3) a fiduciary may not act in any capacity involving the plan, on behalf of a party whose interests are

Case No.:



adverse to the interests of the plan, its participants, or its beneficiaries.  Prudential's handling of Plaintiff's AD&D claim falls far short of these standards.

45.     When denying Plaintiff's claim, Prudential failed to take into consideration how the law interprets clauses such as the loss of use clause at issue in this matter.  Courts have acknowledged that the "mere fact that [a] foot was still attached to [a] body" is insufficient to "demonstrate functionality."  *Stockman v. GE Life, Disability and Medical Plan*, 625 F.App'x 243, 249 (6th Cir. 2015); see id. at 252 ("If Stockman's injury, which has resulted in the "permanent" loss of the use of his foot in the way that a foot should be used does not qualify him to receive benefits, we are unsure of a situation, absent actual severance, where a claimant would qualify."); *Crawford v. Lloyds London*, 275 Cal.App.2d 524, 529-30 (1969) (Ruling that a policy providing a person that had a significant portion, but not all of, his hand amputated suffered a total "loss of a limb.").

46.     The language in the Policy supports that coverage is present and he has lost use of his foot.  At a minimum, the term "loss of Use of a . . . foot" is ambiguous and thus the *contra proferentem* rule applies.  However, insofar as the Policy "is fairly susceptible of two different interpretations,. . . the interpretation that is most favorable to the insured will be adopted."  *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538-40 (9th Cir. 1990).

47.     For all of the reasons set forth above, the decision to deny Plaintiff's AD&D benefits was arbitrary, capricious, wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plan, and contrary to law. Prudential abused its discretion in deciding to deny this claim, as the evidence shows that its denial decision was arbitrary and capricious.  Further, Prudential's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006), and *Metropolitan Life Insurance Co. v.*

Case No.:



*Glenn*, 544 U.S. 105 (2008).  Prudential's denial of Plaintiff's claim constitutes an abuse of discretion.

48.   As a direct and proximate result of Prudential's denial of Plaintiff's claim, Plaintiff has been deprived of AD&D benefits from August 31, 2021 onward.

49.   As a direct and proximate result of the denial of his claim for AD&D benefits, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

50.   A controversy now exists between the parties as to whether Plaintiff is entitled to AD&D benefits.  Plaintiff seeks the declaration of this Court that he is entitled to these benefits under the Plan.  In the alternative, Plaintiff seeks a remand to the claims administrator for a determination of Plaintiff's claim that is consistent with the terms of the Plan.

51.   Plaintiff alleges all of the same conduct against Does 1 through 10 as it does against Prudential in this First Cause of Action and in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court grant the following relief against all Defendants:

1.   For all Plan benefits due and owing Plaintiff, including AD&D benefits.

2.   For costs and reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g).

3.   For pre-judgment and post-judgment interest on the principal sum, accruing from the date on which the obligations were incurred.  *See Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) ("A district court may award prejudgment interest on an award of ERISA benefits at its discretion."); *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992).  Specifically, Plaintiff

Case No.:



seeks interest at the rate of 10% per annum, pursuant to California Insurance Code Section 10111.2.

4.    For such other and further relief as this Court deems just and proper.

Dated:  January 23, 2024                    McKENNON LAW GROUP PC

By: _____
ROBERT J. McKENNON
NICHOLAS A. WEST
Attorneys for Plaintiff Michael Bell



-14-                                        Case No.: